IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DION A. MCDONNELL,            )
                              )
        Plaintiff,             )
v.                            )      Civil Action No. 10-222
                              )      Chief Judge Lancaster
MICHAEL J. ASTRUE             )
COMMISSIONER OF               )
SOCIAL SECURITY,              )
                              )
        Defendant.             )

## MEMORANDUM OPINION AND ORDER OF COURT

Gary L. Lancaster,
Chief Judge                          October  5 , 2010

I.  Introduction

    Plaintiff Dion McDonnell ("McDonnell") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f]. For the reasons that follow, the motion for summary judgment filed by the Commissioner will be denied and the motion for summary judgment filed by McDonnell will be granted to the extent which it seeks a vacation of the Commissioner's decision. The case

will be remanded to the Commissioner for further administrative proceedings consistent with this memorandum opinion.

## II. Procedural History

McDonnell protectively filed for DIB and SSI benefits on June 9, 2006, and June 13, 2006, respectively. R. at 98-102, 103-05. McDonnell alleged disability beginning June 1, 2005. *Id.* The applications were administratively denied on October 19, 2006. R. at 53-61. McDonnell responded by filing an untimely request for a hearing before an administrative law judge ("ALJ"), but the late filing was excused for good cause. R. at 67. A hearing was held on April 9, 2008, in Morgantown, West Virginia before ALJ George A. Mills, III. R. at 31-48. McDonnell was not present at the hearing. *Id.* His paralegal representative, Barbara Manna, communicated McDonnell's request that the ALJ issue a decision on the record without his appearance or testimony because he was unable to travel to the hearing from his new residence in Ohio and did not wish for the case to be transferred. R. at 34. James Genough, an impartial vocational expert ("VE"), testified. R. at 43-47.

In a decision dated April 28, 2008, the ALJ determined that McDonnell was not "disabled" within the meaning of the Act. R. at 21-30. The Appeals Council denied McDonnell's request for review on January 11, 2010, thereby making the ALJ's decision

the final decision of the Commissioner in this case. R. at 5-7. McDonnell commenced this action on February 17, 2010, seeking judicial review of the Commissioner's decision. Doc. No. 1. McDonnell and the Commissioner filed motions for summary judgment on June 24, 2010, and July 26, 2010, respectively. Doc. Nos. 7 & 9. These motions are the subject of this memorandum opinion.

## III. Standard of Review

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191(3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it

cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777(3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983).

The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work

5

> experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## IV. Discussion

In his decision, the ALJ determined that McDonnell had not engaged in substantial gainful activity subsequent to his alleged onset date. R. at 23. McDonnell was found to be suffering from borderline intellectual functioning, bipolar disorder, and attention deficit hyperactivity disorder. R. at 24. These impairments were found to be severe within 20 C.F.R. §§ 404.1520(c) and 416.920(c), but the ALJ determined that they did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or with respect to a single impairment, a "Listed Impairment" or "Listing"). R. at 24-25.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed McDonnell's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: work must be unskilled; no more than occasional contact with supervisors and co-workers, and no contact with the general public; work must be low stress with no production quota expectations. R. at 25.

McDonnell was born on August 7, 1986, and was 18 years of age as of the alleged disability onset date. R. at 28. He was classified as a "younger individual" under the Commissioner's

7

regulations. 20 C.F.R. §§ 404.1563 and 416.963. He had at least a high school education and the ability to communicate in English. R. at 28. McDonnell did not have any past relevant work. *Id.* The ALJ concluded that McDonnell could perform the representative occupations of truck loader, kitchen helper-dishwasher, and laundry worker. R. at 29. The VE's testimony established that these jobs existed in the national economy for the purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). R. at 46.

McDonnell argues that the ALJ failed to address whether he met the criteria of listing 12.05(C). Doc. No. 8. The Commissioner counters that the ALJ's decision is supported by substantial evidence and that McDonnell did not meet his burden to provide evidence that he met 12.05(C). Doc. No. 10.

It is the ALJ's burden to identify the listed impairments found in 20 C.F.R. Part 404, Subpt. P, Appx. 1, which are relevant to the claimant's impairments. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 n. 2 (3d Cir. 2000). The claimant bears the burden of showing that his impairment meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), *Burnett*, 220 F.3d at 120 n.2 (*citing Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992)). In determining whether a claimant has met this burden, the Commissioner must specify

those listings that potentially apply to the claimant's impairments and give reasons why said listings are or are not met or equaled. *Burnett*, 220 F.3d at 119-20 n. 2; *Scatorchia v. Comm'r of Soc. Sec.*, 137 Fed. Appx. 468, 471 (3d Cir. 2005) (The Commissioner must evaluate "the available medical evidence in the record and then [set] forth that evaluation in an opinion . . . ."). According to the five-step sequential evaluation, if a claimant meets a listing's criteria, the evaluation ends at step three because the claimant is considered to be *per se* disabled and benefits are awarded. *Santise v. Schweiker*, 676 F.2d 925, 927 (3d Cir. 1992). The United States Supreme Court has held that a claimant must prove that his condition meets every criterion in a listing before he can be considered disabled *per se*. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Under 12.05(C), a claimant is disabled if 1) he has an IQ between 60 and 70); 2) has an additional impairment that is severe; and 3) such conditions have been in existence prior to the claimant reaching the age of 22. *Williams*, 970 F.2d at 1184; 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05(C).

Here, McDonnell submitted evidence that was probative of the first prong of listing 12.05(C). R. at 168. Namely, the record includes a psychological report prepared by Pauline Weston, a certified school psychologist with Fayette, Greene,

and Washington Counties, dated March 1, 1995. R. at 167-172. McDonnell, who was eight-and-a-half years old at the time, was referred to Ms. Weston because of his multidisciplinary problems and "very slow academic progress." R. at 167. During her examination, Ms. Weston administered the Wechsler Intelligence Scale for Children-Third Edition, Wechsler Individual Achievement Test, Stanford-Binet Intelligence Scale-Fourth Edition, and the Bender Visual Motor Gestalt Test. *Id.* In terms of cognitive functioning, McDonnell was assessed to have a verbal scale IQ of 65, a performance scale IQ of 68, and a full scale IQ of 64. R. at 168. Ms. Weston noted that McDonnell's "present ability falls in the intellectually deficient range." R. at 172. Further, McDonnell's "present evaluation results and academic history suggest that he could be considered to be within Pennsylvania State Board of Education Rules and Regulations for exceptional student status under the definition of mentally retarded." *Id.*

Ms. Weston's IQ test is probative of McDonnell meeting the first criterion of listing 12.05(C) because it demonstrated an IQ score between 60 and 70. *Williams*, 970 F.2d at 1184. There was also evidence of record that the other criterion may have been met. Specifically, as per the ALJ's decision at step two, McDonnell had other severe impairments of bipolar disorder and

attention deficit hyperactivity disorder. R. at 24, *See Markle v. Barnhart*, 324 F.3d 182, 188 (3d Cir. 2003).

Additionally, because McDonnell's IQ was documented between 60 and 70 when he was 8 years old, there was relevant evidence of 12.05(C)'s third criterion that a claimant have had the mental impairment before he reached the age of 22. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C).

Furthermore, Edward Zuckerman, Ph.D.'s Psychiatric Review Technique indicated that listing 12.05(C) was among the listings relevant to McDonnell's impairments. R. at 221-27. Dr. Zuckerman completed a medical summary as part of his psychiatric review technique and indicated that 12.02 Organic Mental Disorders, 12.04 Affective Disorders, and 12.05 Mental Retardation were the categories upon which his medical disposition was based. R. at 215. Dr. Zuckerman noted that McDonnell's borderline intellectual functioning was a medically determinable impairment that "is present [but] that does not precisely satisfy the diagnostic criteria" of 12.05(C). R. at 219. Despite Dr. Zuckerman's opinion that McDonnell did not meet listing 12.05, its inclusion in his psychiatric review technique is indicative of its relevance in McDonnell's disability determination.

Despite relevant evidence of McDonnell's alleged mental retardation and Dr. Zuckerman's psychiatric review technique including 12.05 as a relevant listing, the ALJ did not analyze whether McDonnell met listing 12.05(C). The ALJ determined that McDonnell's mental impairments, considered singly and in combination "do not meet or medically equal the listings of 12.02 and 12.04" and discussed the applicable medical evidence in supporting his conclusion. R. at 24. However, the ALJ did not determine whether McDonnell met listing 12.05(C) nor was there any discussion of evidence demonstrating that McDonnell's IQ may be in the range of 60-70, which is probative of 12.05(C)'s first prong. Indeed, the ALJ did not address McDonnell's 1995 IQ score of 64 anywhere in his decision. R. at 21-30.

An ALJ has the duty to evaluate all relevant evidence in the record. *Fargnoli*, 247 F.3d at 41; *Burnett*, 220 F.3d at 121; *Cotter*, 642 F.2d at 704. An ALJ may not make speculative inferences from medical evidence and cannot reject evidence for no reason or for the wrong reason. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981), *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d. Cir. 2009). Therefore, the ALJ must explain the evidence supporting his findings and the reasons for discounting the evidence he rejects, so that the reviewing court can

12

determine if significant probative evidence was improperly rejected or simply ignored. *Burnett*, 220 F.3d at 121; *Cotter*, 642 F.2d at 705-07.

While the ALJ may properly accept some parts of the medical evidence, and reject other parts, he must consider all the evidence and give some cogent reason for discounting the evidence he rejects, particularly when he rejects evidence that suggests a contrary disposition. *Adorno*, 40 F.3d at 48 (citing *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986); *Stewart*, 714 F.2d at 290). In *Burnett*, the United States Supreme Court for the Third Circuit held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review[1]. *Burnett*, 220 F.3d at 120; *See Jones*, 364 F.3d at 505 & n.3.

If an ALJ fails to mention probative evidence, then a reviewing court will not be able to determine whether the ALJ's

---

[1] The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.

13

decision is supported by substantial evidence under § 405(g). *Cotter*, 642 F.2d at 705-07. Here, the ALJ failed to discuss McDonnell's IQ test result of 64 which was probative evidence that he met listing 12.05(C)'s first prong. *Williams*, 970 F.2d at 1184. McDonnell's record also included relevant evidence of listing 12.05(C)'s two other criteria. *Id.* Therefore, because the ALJ did not discuss or even mention any evidence probative of listing 12.05(C), this Court is unable to review whether the ALJ's subsequent decision is supported by substantial evidence[2]. *Cotter*, 642 F.2d at 705-07.

Moreover, a district court only reviews the ALJ's decision to determine if it is supported by substantial evidence. In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutherford*, 399 F.3d at 552. The district court considers and reviews only those

---

[2] McDonnell also argues that the ALJ did not provide for resulting functional limitations in his RFC analysis. Doc. No. 8, 9. However, McDonnell has not noted medical evidence demonstrating functional limitations which were not included in his RFC. R. at 9-10. On remand, McDonnell may supplement the medical record. *Stover v. Shalala*, 1995 WL 327981 * 8 (E.D.Pa. May 31, 1995). In his subsequent decision, the ALJ must include all limitations which are medically established and supported by the record in his RFC analysis. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987), *Rutherford v. Barnhart*, 399 F.3d 546 548 (3d Cir. 2005).

findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *See Fargnoli*, 247 F.3d at 44 n. 7[3]. Therefore, because the ALJ did not mention McDonnell's IQ score within the mental retardation range, there are no grounds for this Court to speculate that the ALJ did not discuss the IQ score because it was not "current" under the applicable legal standards. The ALJ was free to discuss the weight he decided to give to any of McDonnell's IQ scores, but his decision not to address an IQ score within the mental retardation range cannot be affirmed.

The only remaining question is whether a judicially-ordered award of benefits is proper, or whether the case should be remanded to the Commissioner for further administrative proceedings. An immediate award of benefits is appropriate only

---

[3] ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *Chenery Corp.*, 318 U.S. at 63, that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' " *Id.* at 87; parallel and other citations omitted).

15

when the evidentiary record has been fully developed, and when the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled. *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). That standard is not met here.

There is evidence probative of 12.05(C)'s criteria. Specifically, McDonnell's 1995 IQ test indicated that he had an IQ of 64, within listing 12.05(C)'s definition of mental retardation. *Williams*, 970 F.2d at 1184. Furthermore, Pushkulli Pillai, M.D., completed a Mental Residual Functional Capacity Questionnaire in July 2007 and referenced McDonnell's 1995 IQ test to support her conclusion that he had a low IQ or reduced intellectual functioning. R. at 288.

However, subsequent IQ tests taken after McDonnell reached adulthood contradict his prior IQ test result and indicated that he was not mentally retarded. In 2004, Thomas Andrews, Ph.D., a psychologist, diagnosed borderline intellectual functioning based on a performance IQ score of 76. R. at 176. In May 2006, Amy Sedlock, a licensed psychologist posited that McDonnell appeared to be "currently functioning above the range of mental retardation." R. at 196. Further, in September 2006, Dennis Kreinbrook, Ph.D., performed a consultative psychological evaluation and opined that McDonnell "appear[ed] to have

borderline intellectual ability." R. at 296. Therefore, the evidentiary record as a whole does not clearly point in favor of a finding that McDonnell is statutorily disabled under 12.05(C).

V. **Conclusion**

The ALJ's decision is not supported by substantial evidence within the meaning of § 405(g) because he failed address probative medical evidence or determine whether McDonnell met listing 12.05(C). *Cotter*, 642 F.2d at 705-07.

AND NOW, this 5th day of October, 2010, IT IS HEREBY ORDERED that the motion for summary judgment filed by the Defendant (Doc No. 9) is DENIED and that the motion for summary judgment filed by the Plaintiff (Doc No. 7) is GRANTED. In accordance with the fourth sentence of 42 U.S.C. §405(g), the administrative decision of the Commissioner of Social Security is hereby VACATED and the case will be remanded to the Commissioner for further administrative proceedings consistent with this memorandum opinion.

BY THE COURT:

_____
Gary L. Lancaster,
Chief United States District Judge